UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RENEE EVERETT and BUILDING WERKS OF WI, LLC,

    Plaintiffs,

v.                                      Case No. 10-C-634

PAUL DAVIS RESTORATION, INC.,

    Defendants.

## ORDER GRANTING FEES

Following this court's entry of judgment on April 21, 2015, Defendant Paul Davis Restoration, Inc. moved for attorney's fees pursuant to the franchise agreement that bound Plaintiff Renee Everett. (ECF No. 89-2.) Under the relevant sections of that agreement, the parties agreed that (1) they would arbitrate any disputes (Section 23.1); (2) bear their own fees incurred with respect to such efforts (Section 23.2); but they also agreed that any party who "fail[ed] or refus[ed] to arbitrate a dispute or to abide by the decision of the arbitration panel shall be liable to the other party for all costs and attorneys' fees incurred in enforcing the arbitration provisions." (*Id.*) The attorney's fees clause is thus a means of enforcing the arbitration clause; it warns parties that if they do not abide by the arbitration they will be on the hook for the other side's attorney's fees if they lose.

Everett raises a number of arguments in opposition. First, she argues that this action was not specifically about arbitration but about "application of the entire franchise agreement." (ECF

1

No. 248 at 3.) As such, the fees sought were not incurred due to the "failing or refusing to arbitrate a dispute," which is what the fees clause requires. The whole point of the lawsuit, in her view, was to challenge whether Mrs. Everett was a "party" under the franchise agreement, not whether she was specifically bound by any arbitration provision. But that is an artificial reading of the purpose of the lawsuit. As the Seventh Circuit recognized in the first sentence of its opinion, "In the case before us we must determine whether an owner-operator of a franchise is obligated to arbitrate under a franchise agreement because she received direct benefits from the agreement despite not having signed the document." *Everett v. Paul Davis Restoration, Inc.,* 771 F.3d 380, 381-82 (7th Cir. 2014). The same court later repeated: "[t]he primary question before us is whether Ms. Everett is bound to the arbitration award, pursuant to the franchise agreement." *Id.* at 383. PDRI responded to the Everetts' violation of the non-compete clause by initiating arbitration. Rene Everett then sued seeking a declaration that she was not bound by the arbitration agreement. After it won the arbitration, PDRI returned to court seeking confirmation of the award, which Everett fought by moving to vacate the award. Obviously, the arbitration clause, and the result of the duly conducted arbitration, were the genesis of this lawsuit, the entire reason this lawsuit exists. This was not some abstract case about whether Everett was a "party" to a franchise agreement that *happened* to have an arbitration clause, it was about whether she had to arbitrate and to abide by the results of the arbitration. By fighting arbitration all the way, she was "failing or refusing to arbitrate . . . or abide by the decision of the arbitration panel," the clause that triggers fees. In some sense it is true that the primary question involved whether she was a "party" to the agreement in the first place, but that does not mean that was the *exclusive* purpose of the lawsuit. The two issues went hand-in-hand, as the Seventh Circuit recognized. Otherwise, even a signatory to the franchise agreement could

2

avoid the fees clause simply by arguing that the agreement did not apply (for whatever reason).

Everett next argues that Section 23.2 is unenforceable because it violates the Wisconsin Fair Dealership Law. Specifically, the attorneys' fees clause begins by stating that "[i]n any dispute arising out of this Agreement each party shall be responsible for their [sic] own costs and expenses, including reasonable attorneys' fees." Under the WFDL, however, plaintiffs may recover attorneys' fees if successful. Wis. Stat. § 135.06 provides that: "If any grantor violates this chapter, a dealer may bring an action against such grantor in any court . . . .together with the actual costs of the action, including reasonable actual attorney fees, and the dealer also may be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances." Thus, in Everett's view, the entire fees clause is unenforceable because it violates the WFDL.

It is unclear how this provision is even applicable, however. On its face, the clause Everett alleges violates the WFDL applies to the "normal" case, in which each party would bear its own costs incurred in the arbitration of their dispute. But PDRI is not asserting that part of the clause at all; instead, it is citing the exception to that clause, which begins, "Provided, however, that any party hereunder failing to comply [with arbitration] . . . shall be liable to the other party for all costs and attorneys' fees incurred. . ." Thus, the very section Defendants cite is not even at issue here. The fact that an earlier section might be at odds with something in the WFDL is irrelevant.

Everett further argues that PDRI has waived any claim for fees by not seeking fees in its answer or any counterclaim. But fees are commonly sought by motion practice following the conclusion of a case; after all, the fee amounts are not even known until the case has been resolved. This is why Rule 54(d)(2) specifically envisions motion practice at the end of a case. Fed. R. Civ.

3

P. 54(d)(2). Like costs, fees are not an element of the underlying case, and neither are they an independent "claim" or cause of action that need be pled.

Everett also argues that Paul Davis disclaimed attorney's fees when it explicitly failed to seek confirmation of the portion of the arbitration award that awarded attorney's fees. In a footnote in its brief seeking to confirm the arbitration award, PDRI stated that "PDRI requests confirmation of the Award in its entirety, with the sole exception of the portion awarding PDRI its expenses (set forth in paragraph (j) of the Award)." (ECF No. 146 at 2 n.1.) Everett argues this was because PDRI did not want the award to appear oppressive, which could lend support to Everett's arguments challenging the award. She now argues that judicial estoppel prevents PDRI from taking a different position.

PDRI is not taking a different position. It is not seeking to enforce the arbitration award's grant of attorney's fees. Instead, it is relying on the franchise agreement's clause to obtain fees incurred in defending against Everett's efforts to fight the very legitimacy of the arbitration itself. Indeed, many of the fees sought post-date the arbitration proceeding, and so any claim for fees now is necessarily different than the award made by the arbitration panel. Moreover, judicial estoppel only applies if a party's positions are "clearly inconsistent," and here they are not. *Matter of Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990) ("the estoppel may be applied only where a clearly inconsistent position is taken . . .") Declining an opportunity to enforce a fee *award* is not the same as renouncing *any* right to fees for all time. In fact, declining to enforce that part of the award is arguably not even a "position" at all, but merely a procedural tactic. Here, there is simply no inconsistency.

Finally, Everett believes the fees sought are not sufficiently documented to allow an award.

4

In addition to the documentation, she raises questions about two of the entries relating to preparation for a deposition of a Mr. Hoiriis.

PDRI notes, however, that the premise of Everett's objections is an incorrect "lodestar" standard, which is based on community norms and reasonableness. Those kinds of fee analyses often arise in statutory fee-shifting cases. In the private market, however, particularly in this Circuit, what's important is the fees that were *actually* incurred in the arms' length give-and-take of commercial reality. Here, the parties agreed to pay "attorney's fees" (not even "reasonable" attorneys' fees, although that may be implied), and the best evidence of what they incurred is what they actually paid. The point is that courts (and losing parties) are not entitled to perform a searching, *ex post facto* analysis of the wisdom of each dollar incurred—that is a risk parties take by agreeing to that provision in the first place. The Seventh Circuit has explicitly embraced this free-market approach:

> Fees shifted by contract are a different matter [than fees awarded by statute]. Because fee-shifting occurs as a result of the parties' *ex ante* private ordering, we have held that fees shifted pursuant to a contractual provision "require reimbursement for commercially-reasonable fees no matter how the bills are stated." *Matthews v. Wisconsin Energy Corp., Inc.,* 642 F.3d 565, 572 (7th Cir. 2011) (citations omitted). The inquiry into commercial reasonableness "does not require courts to engage in detailed, hour-by-hour review of a prevailing party's billing records." *Id.*

*Johnson Controls, Inc. v. Edman Controls, Inc.,* 712 F.3d 1021, 1027 (7th Cir. 2013).

Review of the spreadsheets submitted by counsel (McGuireWoods and Quarles & Brady) indicates that they are billing entries in a form commonly produced by law firms. (ECF No. 242-3 and 242-5.) They indicate the name of the lawyer doing the work, the nature of the work (e.g., "research and analysis regarding non-signatory legal theories for compelling arbitration"), and the

5

amount billed. Both law firms have limited their fee request to their efforts incurred in trying to give effect to the arbitration clause to which Everett was bound. The bills were paid in the normal course of business by PDRI, whose corporate counsel reviewed them as part of their duties. Everett's objections are limited to a tiny fraction of the amounts billed, and PDRI has explained how those bills are related to this case. Accordingly, Everett's objection to the amounts billed is not persuasive.

For the reasons given above, the motion for attorney's fees is **GRANTED**. Everett is ordered to pay the attorney's fees as set forth in ECF No. 242-3 and 242-5 in the total amount of $374,552.70.

**SO ORDERED** this 3rd day of August, 2015.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

6

Case 1:10-cv-00634-WCG   Filed 08/03/15   Page 6 of 6   Document 252